IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| JOSHUA CALHOUN | § | |
| v. | § | CIVIL ACTION NO. 5:23cv28-JRG-JBB |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Joshua Calhoun, an inmate of the Texas Department of Criminal Justice, Correctional Institutions Division proceeding *pro se*, filed this civil action purportedly as a petition for the writ of habeas corpus. The petition was referred to the undersigned United States Magistrate Judge pursuant to § 28 U.S.C. 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. Petitioner's Claims**

Petitioner was ordered to file an amended petition setting out facts in support of his claims, in conformity with Rule 2 of the Rules Governing § 2254 Petitions in the United States District Courts. Dkt. No. 6. In his amended petition, Petitioner refers to a 2014 conviction for evading arrest in Henderson County, Texas and to a 2022 disciplinary case which he received at the Telford Unit of TDCJ; however, his claims for relief do not relate to either of those proceedings. Dkt. No. 11.

Instead, Petitioner's first claim for relief says that he is being delayed access to court, preventing him from filing charges. *Id.* at 6. He asserts that on May 25 and June 7, 2021, and April 25 and April 26, 2022, he was assaulted by TDCJ officers. *Id.* Petitioner says that he filed grievances, but the Office of the Inspector General is "keeping me from confronting who assaulted me," apparently by not answering his grievances.

1

Petitioner continues this theme in his second ground for relief, asserting that he has been denied due process because his grievances will either not be returned or "returned out of time, failing to gather evidence and testimony." Dkt. No. 11 at 6.

In his third ground for relief, Petitioner says that he has been eligible for parole several times, but the major will not run a Unit Classification Committee hearing to allow him to raise his classification status. He says that this is keeping him at a higher custody level, thus preventing him from making parole. For relief, Plaintiff asks as follows:

> To be free from retaliation. To have free access to the courts and allowed to file charges. Have my grievances handled in a timely manner and to have administrative procedures UCC run and run on time and fair and to be able to gather and present and preserve evidence and confront my accuser.

Dkt. No. 11 at 7.

In an attached memorandum, Petitioner says that the TDCJ units have been on lockdown and he has been moved a number of times, keeping him away from his property. He offers two exhibits from the discovery in case no. 6:21cv279, in which he says that the unit was forged. Petitioner complains that he has been denied the opportunity to press charges for assault and refers to exhibits showing that his family has contacted the Director of TDCJ as well as the police. He states that Exhibit I shows that the Attorney General "clearly admits wrongs and excessive force" and asks the Court to review the video of excessive force which is being withheld from him. Dkt. No. 11 at 11.

Petitioner attaches a number of exhibits to his memorandum. Exhibit A is an offense report, dated June 7, 2021, alleging that Petitioner assaulted another inmate. Dkt. No. 11-1 at 1-2. Exhibit B is another copy of that same offense report. Dkt. No. 11-1 at 2-4. Exhibit C is grievance no. 2022006205, signed on September 13, 2021, in which Petitioner stated that he wants to file charges against officers, but the Office of the Inspector General will not talk to him about attempted murder and threats of a sexual nature by another officer or respond to his I-60 inmate request. Dkt. No. 11-1 at 5-6. He states that the Texas Rangers told his family that responsibility falls first on OIG, and he is being denied due process. *Id.* The response to this grievance says that because he complained that he had received sexual threats from security staff, the grievance was processed as

an emergency claim of sexual harassment from staff and forwarded to the Michael Unit for investigation. *Id.* at 7. His claim could not be substantiated, and so no action is warranted. *Id.*

In his Step Two appeal of this grievance (Dkt. No. 11-1 at 7), Petitioner says that Warden Marshall signed his Step One grievance knowing that Petitioner has filed a federal lawsuit under cause no. 6:21cv279. He says that Marshall has repeatedly falsified records giving false testimony in order to try to conceal a verbal sexual assault and alter the outcome of a federal lawsuit. The response to this grievance appeal says that Petitioner was appropriately advised at Step One and his allegation could not be sustained, but that staff conduct would continue to be monitored to ensure professionalism and policy compliance and corrective action will be taken if any staff misconduct is confirmed.

Exhibit E is a letter from Petitioner to TDCJ Executive Director Bryan Collier, asking that Warden Marshall and Warden Townsend be removed from the Michael Unit to stop any other misuse of official authority or information, as well as tampering with witnesses through harassment or retaliation. Dkt. No. 11-2 at 1. He says that he filed an LID (life in danger complaint) against Warden Marshall, who was then allowed to conduct his own investigation against himself, thus denying Petitioner the right to confront his accuser or to present evidence. All of this happened after Petitioner was placed in "PHD safekeeping." *Id.*

Exhibit F is an email from Petitioner's mother to Sgt. Heavner is apparently a criminal investigator for the City of Palestine. *Id.* at 2. The letter says that Petitioner filed a life in danger complaint against Marshall, who conducted his own investigation and conspired with other unit officials to have Petitioner removed from safekeeping. Petitioner asked that the email be sent to Sgt. Heavner because the Office of the Inspector General has failed even to obtain a statement. The email states that Petitioner would like to press criminal charges against Warden Marshall and Warden Townsend.

Exhibit G appears to be an acknowledgment that Petitioner's mother contacted the Office of the Attorney General through a webform submission of Crime Victims Services. *Id.* at 3. The top of the document says "again, thank you for writing, please feel free to contact the Office of the

3

Attorney General if we may be of further assistance," but there is a handwritten note saying "not sent to anyone."

Exhibit H is an email exchange between Petitioner's mother and Brian Patrick from the TDCJ Office of the Ombudsman. Dkt. No. 11-3 at 4. She says that the Office of the Inspector General is refusing to allow Petitioner to file charges against the officers who assaulted him, and Patrick replied that the Office of the Ombudsman has no authority over OIG, but he has contacted OIG to advise them of her concern, and OIG reported that they would contact her. Petitioner's mother responded by saying that it might be the Ombudsman not letting Petitioner press charges and asks "who handles matters when the guards are abusing the prisoners?" *Id.*

Exhibit I is a pleading from the Attorney General in case no. 6:21cv279, saying that disputed issues of fact exist precluding summary judgment and so the Defendants will not be filing a motion for summary judgment in that case. Dkt. No. 11-3 at 1. Exhibit J is an image of the CD of the videos and surveillance footage in that case.

Exhibit K is an "employee use of force fact finding inquiry," signed by Warden Townsend, concluding that a guard named Zachary Chatman used his knees to restrain the inmate, which is not a technique taught or recommended in the TDCJ Use of Force Plan. Dkt. No. 11-4 at 1-2. A disciplinary hearing for Chatman would be scheduled. An administrative review concluded that staff actions were not consistent with the Use of Force Plan because a procedural violation was committed; the box for "possible excessive force" was not checked. The review said that the use of force was justified and summarized the incident by saying that Petitioner struck an inmate named Smith several times with closed fists and refused orders to stop, requiring the use of minimal force and chemical agents in order to gain compliance. Exhibit L is an employee offense report charging Officer Chatman with using his knees as a restraining technique not taught or recommended in the Use of Force Plan. Dkt. No. 11-4 at 3.

Exhibit M is Step One grievance no. 2023034318, signed by Petitioner on November 18, 2022, saying that he was supposed to see the Unit Classification Committee in October of 2022 but

the unit was on lockdown. He says that he is "wrongfully detained in G-5 lockup" (i.e. close custody) due to missing the UCC hearing. Dkt. No. 11-5 at 1. The response to this grievance says that Petitioner was not reviewed on October 20 due to a lockdown and his next review is not until December.

In his Step Two appeal of this grievance, Petitioner says that he was eligible to see the UCC for a custody level change but the committee was not run. He says that he was supposed to go from G-5 (close custody) to G-2 (minimum custody), and this can affect his parole. The response to the grievance says that Petitioner received a major case for threatening staff on October 20, 2022, for which he was found guilty on October 27. This affected his promotional review, and he will be eligible for another review in October of 2023. The UCC review was rescheduled for April of 2023 because of the lockdown. Dkt. No. 11-5 at 3.

On October 27. 2022, Petitioner filed grievance no. 2023025849, saying that when he went to court in his disciplinary case, Captain Ricks told him that he was guilty before he even sat down or was able to present any testimony. There was no computer in the room and the evidence included video footage of a person named Hayden threatening to assault him, so it was not a fair hearing. The response to this grievance, signed by Warden Coger, stated that the disciplinary case had been reviewed, no procedural errors were noted, there was sufficient evidence to support the guilty verdict, and the investigation found no evidence to warrant the overturning of the case. *Id.* at 5. In his Step Two appeal of this grievance, Petitioner again says that Captain Ricks told him he was guilty before he even sat down and there was no computer for him to present evidence. He complains that Captain Ricks, the counsel substitute, and Coger are all black so he believes he was the victim of racial discrimination. Petitioner says that Hayden came to his cell and threatened to sexually assault him and beat him up, and the video will show a female officer fighting to keep Petitioner's door shut in order to keep Hayden out. He again complains that Ricks was biased and no video evidence was presented. The response to this grievance appeal says that the disciplinary case has been reviewed, the charge was appropriate for the offense and the verdict was supported by a preponderance of the evidence, all due process requirements were satisfied, and the punishment

was within agency guidelines. *Id.* at 7.

Exhibit O is a notification advising inmates that they have a right to call and question witnesses, present documentary evidence, be represented by a counsel substitute, and call and question the charging officer at the hearing. Dkt. No. 11-5 at 9. Exhibit P is the cover of the TDCJ Inmate Orientation Handbook, and Exhibit Q is an excerpt from that handbook explaining the grievance procedure. *Id.* at 11; Dkt. No. 11-6, p. 1.

Exhibit R is a grievance dated October 25, 2022, asking to file charges for assaulting officers. Dkt. No. 11-6 at 2. The grievance was screened (i.e. returned unprocessed) as inappropriate. In a Step Two appeal of grievance no. 202304860, signed on November 28, 2022, Petitioner complained that he did not have his property, his cell toilet did not work, and he had to sleep with no sheets or bedding. This grievance was screened as a submission of more than one grievance in a seven-day period. *Id.* at 4.

In Step One grievance no. 2-23-26283, signed on October 27, 2022, Petitioner complained that the staff was throwing his food on the floor of his cell. This grievance was screened for no documented attempt at informal resolution and as a submission of more than one grievance in a seven-day period. *Id.* at 6.

## II. Discussion

The Fifth Circuit has held that the sole function of habeas corpus is to provide relief from unlawful imprisonment or confinement, and it cannot be used for any other purpose. *Cook v. Hanberry*, 592 F.2d 248, 249 (5th Cir.), *clarified on other grounds* 596 F.2d 658, 659 (5th Cir. 1979). Thus, habeas corpus cannot be utilized as a springboard to adjudicate matters foreign to the question of the legality of custody. *Pierre v. United States*, 525 F.2d 933, 936 (5th Cir. 1976).

None of the issues raised by Petitioner, and none of the relief sought, relate to the legality of his custody. The fact that the Office of the Inspector General is not responding to his grievances or investigating these grievances as Petitioner would like does not implicate the fact or length of

Petitioner's confinement, nor does the fact that he has not been able to file the criminal charges he believes appropriate. In any event, Petitioner has no constitutionally protected liberty interest in the prison grievance procedure and so the failure of prison officials to resolve his grievances to his satisfaction does not amount to a due process violation. *Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). In addition, Petitioner does not have a constitutional right to have other persons criminally prosecuted. *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990).

The fact that Petitioner did not have a hearing before the Unit Classification Committee to raise his custodial classification likewise does not set out a claim for habeas corpus relief because this likewise does not implicate the legality of his confinement. Although Petitioner contends that the failure to hold a classification hearing implicated his eligibility for parole, the Fifth Circuit has explained that there is no constitutional expectancy of parole in the State of Texas and it is entirely speculative whether or not a prisoner will be released on parole, even if he is eligible; thus, a delay in a petitioner's consideration for parole cannot support a constitutional claim. *Malchi v. Thaler*, 211 F.3d 953, 957 (5th Cir. 2000). In other words, even had Petitioner had his classification hearing in October of 2022 as scheduled, and had he received a promotion to minimum custody, he still had no assurance or expectancy that he would actually be released on parole when he became eligible. Thus, Petitioner has no habeas corpus remedies available concerning the classification hearing or his eligibility for parole. *See also Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) (loss of the opportunity to earn good time credits, which might lead to earlier parole, is not a constitutionally protected liberty interest); *Hernandez v. Velasquez*, 522 F.3d 556, 562 (5th Cir. 2008) (no protected liberty interest in custodial classification). Petitioner's complaints about an alleged assault and about the conditions of his confinement likewise do not implicate the legality of his confinement. *See, e.g., Butler v. Director, TDCJ*, civil action no. 6:22cv345, 2022 U.S. Dist. LEXIS 138803, 2023 WL 5088967 (E.D.Tex., May 11, 2023), *Report adopted at* 2023 U.S. Dist. LEXIS 138052, 2023 WL 5051307 (E.D.Tex., August 8, 2023) (citing *Pierre*, 525 F.2d at 936) (claims of use of force and denial of medical care are not cognizable in habeas corpus). Because Petitioner does not raise any claims which are cognizable in federal habeas corpus, his petition for habeas corpus relief

should be dismissed.

### III. Conclusion

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A district court may deny a certificate of appealability *sua sponte* because the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

A certificate of appealability may only issue if the prisoner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Buntion v. Lumpkin*, 982 F.3d 945, 948 (5th Cir. 2020). In order to make that showing, the petitioner must demonstrate that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further. *Buck v. Davis*, 580 U.S. 100, 115 (2017). The Fifth Circuit's review is not a full consideration of the factual or legal bases adduced in support of the petitioner's claims, but rather an examination of whether the district court's decision was debatable. *Buntion*, 982 F.3d at 948, *citing United States v. Davis*, 971 F.3d 524, 530 (5th Cir. 2020).

Petitioner has not shown, nor does the record indicate, that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented are adequate to deserve encouragement to proceed further. Consequently, he is not entitled to a certificate of appealability.

RECOMMENDATION

It is accordingly recommended that the above-styled application for the writ of habeas corpus be dismissed with prejudice. It is further recommended that a certificate of appealability be denied *sua sponte*.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection which merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

SIGNED this the 31st day of January, 2024.

J. Boone Baxter
UNITED STATES MAGISTRATE JUDGE